**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| LEWIS ARCHER and SHEARIE ARCHER, | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : CA 19-0258-TFM-MU |
| | : |
| AMERICA'S FIRST FEDERAL CREDIT UNION, | : |
| | : |
| Defendant. | |

# **REPORT AND RECOMMENDATION**

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on Plaintiffs' second-amended complaint (*see* Doc. 7), Defendant America's First Federal Credit Union's ("AFFCU's") motion to dismiss second-amended complaint (Doc. 15; *see also* Doc. 16 (AFFCU's evidentiary submission)), as supplemented (Doc. 19), Plaintiff's response in opposition, with attachments (Doc. 23), and AFFCU's reply (Doc. 24). Upon consideration of these pleadings, as well as other pleadings in the file (Doc. 20 (Plaintiffs' motion to recall writ of possession and brief); Doc. 22 (Defendant's response in opposition); Doc.25 (Plaintiffs' response to Defendant's response)), the Magistrate Judge **RECOMMENDS** that the Court **GRANT** AFFCU's motion to dismiss second-amended complaint (Doc. 15), as supplemented (Doc. 19), and **DENY** Plaintiffs' motion to recall writ of possession (Doc. 20).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lewis Archer initially filed a complaint against AFFCU in this Court on May 31, 2019. (Doc. 1). Following entry of an order instructing Plaintiff to file an amended complaint and an amended motion to proceed without prepayment of fees (or, alternatively, pay the $400.00 filing fee) (*see* Doc. 4), the Plaintiffs ultimately paid the filing fee (Doc. 6) and filed a second-amended complaint (Doc. 7) on July 2, 2019.[1]

In the second-amended complaint, Plaintiffs specifically aver that this Court may exercise federal question jurisdiction, 28 U.S.C. § 1331, and that their claims are being brought pursuant to § 6(f) of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(f)(1)-(3), and 12 C.F.R. § 1024.41(a)[2]. (*See* Doc. 7, at 1-2). Plaintiffs set forth two counts in their complaint: Count 1 asserts AFFCU's violation of the dual-tracking provisions of 12 C.F.R. § 1024.41(f)(1)(i) by virtue of Defendant making a pre-foreclosure first notice of filing on July 11, 2014 without Plaintiffs' mortgage being 120 days late (Doc. 7, at 2) and Count 2 asserts AFFCU's violation of the dual-tracking provisions of 12 C.F.R. § 1024.41(i) "by requesting a duplicate second application in the beginning of October of 2014 after the Archer[]s had already gone through a thorough [a]pplication process with submitted tax returns at the beginning of June 2014." (Doc. 7,

---

[1] Plaintiff Lewis Archer filed an amended complaint on June 10, 2019 (Doc. 5) before he received the undersigned's Order dated June 7, 2019 (Doc. 4). Thus, the complaint filed by Lewis and Shearie Archer on July 2, 2019 (Doc. 7) constitutes the operative pleading in this case. *See, e.g., Rosa v. Florida Dep't of Corrections,* 522 Fed.Appx. 710, 714 (11th Cir. June 26, 2013) ("Under the Federal Rules of Civil Procedure, 'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.'" (quoting *Krinsk v. SunTrust Banks. Inc.,* 654 F.3d 1194, 1202 (11th Cir. 2011)).

[2] "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a).

at 4). The factual underpinnings of Plaintiffs' claim are set forth in the second-amended complaint and read, in relevant measure, as follows:

> Lewis and Shearie Archer, husband and wife[,] executed a note and mortgage, dated May 9, 2008, payable to AFFCU in the principal amount of $165,000.00 secured by the following property:
>
> Lot 1, Tara Estates as recorded in Map Book 20,
> Page 89, In the Probate Office of Mobile
> County, Alabama.
>
> The street address of the property is:
> 9070 O'Hara Drive
> Mobile, Alabama 36695
>
> The mortgage was recorded in the office of the Judge of Probate of Mobile County, Alabama, in Instrument Number 2008040886, Book 6333, Page 996, C. 38.
>
> In early June of 2014, **AFFCU sent the Archers** [] to Hardest Hit Alabama to qualify for mortgage assistance help [] since [the] $1,728 monthly payments were excessive due to Lewis Archer's decrease in income and Shearie Archer's health challenges.
>
> Hardest hit Alabama[,] in conjunction with AFFCU[,] put the Archers through a **thorough qualifying process** that involved [the] submi[ssion] of tax returns. The Archers successfully qualified for $30,000 maximum of approved help towards permanent modification. Since the Archers were qualified and approved, AFFCU was to fax a simple modification plan to 1(888)207-1439 for the $30,000 to be sent and applied. []
>
> On July 9th, 2014, AFFCU Branch Manager Jason Fuller met with Mr. Archer in his office with Assistant Vice President Mark Shadddix on the telephone. The Assistant Vice President confirmed to the Branch Manager and Mr. Archer that AFFCU did in fact accept the $30,000 help. []
>
> Since all were in agreement, the contents of the meeting were memorialized by Mr. Archer on the same day and emailed to the Assistant Vice President so it would be stamped dated. [] On July 11th, 2014, Collection Manager Sharon Richardson sent the Archers a Right to Cure letter towards foreclosure. [] Yet, the memorialized contents of the meeting were emailed again on July 14th[,] 2014[,] this time by the Branch Manager himself to the Assistant Vice President with no complaints, confusion or misunderstanding of plan participation. []

3

> AFFCU simply reneged on the promise and did not fax to Hardest Hit Alabama the already written simple permanent modification plan to be funded by the available $30,000. []
>
> It became clear that AFFCU[,] instead, stopped accepting payments on June 30th, 2014; [f]alsely sent notice on July 11th, 2014 that the Archer[]s were delinquent on the loan[;][3] and started a series of **seven foreclosure attempts while taking the Archers through various modification exercises.** [] Those two tracks ended **19 months later** on January 29th[,] 2016 with an official **foreclosure and a letter ending modification efforts both on the same day.** []
>
> The dates of the seven foreclosure attempt letters while going through the modification processes are: 1. (September 5th, 2014)[,] 2. (January 30th, 2015)[,] 3. (May 28th, 2015)[,] 4. (August 19th, 2015)[,] 5. (November 20th, 2015)[,] 6. (January 4th, 2016)[, and a]ctual foreclosure (January 29th, 2016). [] AFFCU published the Archer[]s['] home for foreclosure purposes at least thirteen times[] (Sept 10th, 2014[,] Sept 17th, 2014[,] Sept 24th, 2014,[,] June 3rd, 2015[,] June 10th, 2015[,] June 17th, 2015[,] August 26th, 2015[,] Sept 2nd, 2015[,] Sept 9th, 2015[,] Dec 2nd, 2015[,] Dec 9th, 2015[,] Dec 16th, 2015[,] Jan 10th, 2016.) []

(*Id.* at 5-7 (internal citations omitted; footnote added; emphasis in original)). [4]

Although the operative pleading in this case (Doc. 7) concludes with the salient fact that the actual foreclosure took place on January 29, 2016 (*see id.* at 7),[5] much more occurred after that date and up to May 31, 2019, the date Lewis Archer initially instituted this action in this Court (*see* Doc. 1).

---

[3] In the letter penned to the Archers on July 11, 2014, AFFCU declared the mortgage in default. (*See* Doc. 7, at 6 & Exhibit AA).

[4] The facts submitted by the Archers in support of their federal-court complaint are virtually identical to the statement of facts contained in Lewis Archer's February 20, 2019 response to brief of appellee AFFCU filed in the Alabama Court of Civil Appeals, by and through his attorney, Marcus McCrory. (*Compare id. with* Doc. 16, Exhibit 11, at 8-12).

[5] AFFCU purchased the real property at 9070 O'Hara Drive, Mobile, Alabama 36695 at the mortgage foreclosure sale held on January 29, 2016. (Doc. 16, Exhibit 1, April 11, 2016 COMPLAINT, at 1).

(Continued)

Based on the Archers' refusal to vacate the premises of 9070 O'Hara Drive, Mobile, Alabama 36695 following the foreclosure sale, a refusal which exists to this day (*see, e.g.,* Doc. 25, at 3 (immediately inserted following the signature line on Plaintiffs' August 26, 2019 response to Defendant's response to Plaintiffs' motion to recall writ of possession is the address of 9070 O'Hara Drive, Mobile, AL 36695)), AFFCU instituted an ejectment action against the Archers, in accordance with § 6-6-280 of the Alabama Code,[6] in the Circuit Court of Mobile County, Alabama on April 11, 2016. (Doc. 16, Exhibit 1, COMPLAINT; *see also id.,* Exhibit 9, at 1-2 ("[AFFCU] filed in the Mobile Circuit Court [] a complaint seeking to eject Lewis Archer and Shearie Archer from real property AFFCU had purchased at a January 29, 2016, foreclosure sale[.]")). In an amended answer and counterclaim, filed January 10, 2017 in the state court action, the Archers asserted as a defense that the "foreclosure sale was conducted contrary to federal law including, but not limited to[,] RESPA, 12 USC §2600, et[] al.[,] and is, therefore, void and of no legal effect[,]" (Doc. 16, Exhibit 2, at 2) and counterclaimed for breach of mortgage contract and declaratory judgment (*id.* at 2-3). Additionally, in a January 24, 2018 response to AFFCU's renewed motion for summary judgment, the Archers argued that AFFCU had no ownership interest in the subject property or any right to pursue ejectment based upon the following:

1. [AFFCU] is prohibited by Federal Law from proceeding with foreclosure if an application to modify has been submitted.
2. Archer submitted the complete application in October 2014 [].
3. During the modification process [AFFCU] never notified him that his application was denied and never notified him of his appeal rights under 12 CFR 1024.41 (f)(1) . . . .

---

[6] "A plaintiff commencing an action for the recovery of lands or the possession thereof has an election to proceed by an action of ejectment or by an action in the nature of an action of ejectment as is provided in subsection (b) of this section." Ala.Code § 6-6-280(a).

> 4. By proceeding with the foreclosure during the modification process, [AFFCU] engaged in "Dual Tracking["] which is prohibited. Since they were prohibited by the "Dual Tracking" Law from foreclosing, any purported foreclosure sale is void or voidable under federal law.

(Doc. 16, Exhibit 3).

On June 25, 2018, the Circuit Court of Mobile County, Alabama entered a judgment in favor of AFFCU and against the Archers (based on AFFCU's motion for summary judgment), finding AFFCU entitled to possession of the subject property and authorizing issuance of a Writ of Possession by the Clerk of Court to the Sheriff of Mobile County, Alabama "for the execution of such writ." (Doc. 16, Exhibit 4). On July 23, 2018, Lewis Archer filed a motion to alter, amend or vacate the summary judgment entered in favor of AFFCU, arguing that there were a number of disputed facts prohibiting the granting of AFFCU's motion (including, whether AFFCU wrongfully engaged in dual tracking by proceeding with foreclosure while the loan modification process was still pending and whether AFFCU provided reasonable notice of the right to reinstate pursuant to federal regulations) and additionally arguing that "Mr. Archer" had "the right to bring an affirmative action to attack the foreclosure because the required Federal Regulations were not followed relating to [c]ounseling and the right to reinstate the mortgage, his counterclaim does this." (Doc. 16, Exhibit 5, at 1 & 2). Following the August 14, 2018 denial of the motion to alter, amend or vacate (Doc. 16, Exhibit 6), Lewis Archer filed notice of appeal to the Alabama Supreme Court, which was deflected to the Alabama Court of Civil Appeals (*see* Doc. 16, Exhibit 7). In the docket statement to the Alabama Supreme Court completed by counsel for Lewis Archer, Marcus McCrory, on August 24, 2018, the following issues were identified: "Whether the

foreclosure was rendered void or voidable because the Credit Union failed to provide modification, failed to provide notice of acceleration, the right to reinstate and notice of foreclosure pursuant to the [m]ortgage and Federal Law. Also whether the Credit Union engaged in 'Dual Tracking'[.]" (Doc. 16, Exhibit 8, at 2). After the parties briefed the issues, the Alabama Court of Civil Appeals issued an opinion on May 17, 2019 affirming the judgment of the Mobile County Circuit Court. (Doc. 16, Exhibit 9.) With this decision, Alabama's civil appellate court thus affirmed that AFFCU was properly awarded possession of the subject property. (*Compare id. with id.,* Exhibit 4). The Alabama Court of Civil Appeals issued a certificate of final judgment of affirmance on June 5, 2019 (Doc. 15, Exhibit 10), ending the state court litigation.

Before the state court litigation was fully concluded, Lewis Archer filed a complaint in this Court on May 31, 2019 (Doc. 1) and, ultimately, the Archers (both of them) filed a second-amended complaint on July 2, 2019 (Doc. 7), the contents of which the undersigned will not again address. AFFCU filed its motion to dismiss second-amended complaint on July 26, 2019 (Doc. 15). AFFCU contends that Plaintiffs' claims are barred by the applicable RESPA statute of limitations (*id.* at 6-7) and by *res judicata* (*id.* at 7-11). AFFCU concludes its brief with the argument that the Archers waived their right to assert any claim under RESPA by failing to raise each such claim as a compulsory counterclaim in the state court action. (*Id.* at 11-12).

On August 1, 2019, AFFCU filed a supplement to its motion to dismiss second-amended complaint. (Doc. 19.) AFFCU attached to its brief pleading a document Lewis Archer filed in the Circuit Court of Mobile County, Alabama that same day, August 1, 2019, entitled "NOTICE OF REMOVAL" but containing the style of this action and

7

averring, as follows: "The following matter was MOVED on 5/31/2019 to Federal District Court. **AMERICA'S FIRST FCU V. LEWIS ARCHER ET AL 02-CV-2016-900716.00[.]** Please recall the Writ of Possession." (Doc. 19, Exhibit 12.) AFFCU argues in its supplement that the foregoing pleading filed in the state court action is but "further evidence that the state court action and this federal action are 'the same cause of action' and that they arise out of the same transaction or occurrence[,]" such that this federal action should be dismissed. (Doc. 19, at 2).

The Defendant's August 1, 2019 supplement to its motion to dismiss prompted the Archers to file a motion to recall writ of possession on August 2, 2019. (*See* Doc. 20, at ¶ 3 ("Since the defendant filed a motion on 8/1/2019 to make this more than it is, we therefore motion the court to issue an order for the defendant itself to immediately recall the writ of possession and cease and desist all such actions while this case is ongoing.")). Attached to the Plaintiffs' motion is a notice placed on the door of the residence at 9070 O'Hara Drive, Mobile, Alabama 36695, advising that eviction is "to take place 8/15/19 9:00 AM." (Doc. 20, Exhibit Q).[7]

---

[7] On August 19, 2019, AFFCU filed its response in opposition to Plaintiffs' motion to recall writ of possession. (Doc. 22.) Initially, Defendant argues the motion is due to be denied because a court of competent jurisdiction issued the writ of possession/execution and Plaintiffs cite no legal or factual support for the relief they seek. (*Id.* at 1.) AFFCU also contends that the proper course for challenging the Mobile County Circuit Court's order authorizing issuance of a writ of possession by the Clerk of Court to the Sheriff of Mobile County, Alabama for the execution of such writ was an appeal to Alabama's appellate courts, which is exactly the route Lewis Archer took. (*See id.* at 2). And since the Alabama Court of Civil Appeals affirmed the judgment of the Mobile County Circuit Court, with that court issuing a final certificate of judgment on June 5, 2019, "AFFCU is within its rights to act on the order issued by the Circuit Court of Mobile County, and Plaintiffs' improper attempt to collaterally attack a valid order from an Alabama state court of competent jurisdiction should be rejected." (*Id.*) In responding to AFFCU's response (*see* Doc. 25), the Archers simply aver that the Defendant did not let the state appellate process run its course without sending the Sheriff out to try to evict them; instead, according to the Archers, AFFCU sent the Sheriff out to their home twice during the state appellate process to place eviction notices on their door. (*See id.* at 2-3 & Exhibit X.) The Archers conclude their response as follows: (Continued)

The Archers filed their response to AFFCU's motion to dismiss on August 19, 2019. (Doc. 23). Initially, the Archers assert that the state courts of Alabama never ruled on the federal issue that is presented in the instant lawsuit[8] and could have not ruled on this issue both because "[a] non-judicial foreclosure like the Archer[]s['] is not considered to be a foreclosure in an Alabama State Court ejectment action[]" and because "[t]he defendant's failure to comply with Federal loss-mitigation regulations concerning the $30,000 that it sent to the Archers to get cannot be asserted as a defense in an Alabama state court ejectment action." (*Id.* at 3-4). Plaintiffs then go on to argue that they did attempt to assert, "as best as possible [] without the benefit of counsel[,]" the two federal issues in this lawsuit as compulsory counterclaims in their reply brief filed in the Alabama Court of Civil Appeals (*see id.* at 5); however, according to the Archers, Alabama's civil appellate court addressed neither issue (*id.*). Finally, Plaintiffs contend that two *res judicata* elements are not met (that is, there was no final judgment on the merits and there was no decision rendered by a court of competent jurisdiction) (*id.* at 6) and that this case is not barred by the statute of limitations (*id.* at 7 ("The defendant's illegal predatory conduct was brought to the attention of Federal

---

"This recent eviction attempt [advising of eviction to take place on 8/15/19] in the middle of this federal litigation is a shameful repeated action tactic on the part of the defendant to put pressure on the plaintiffs to affect the outcome of this federal lawsuit." (*Id.* at 3.) Nowhere in their response, however, do the Archers establish how this Court has the power or jurisdiction to recall a writ issued by a court of competent jurisdiction (that is, the Mobile County Circuit Court). (*See generally* Doc. 25; *compare id. with* Doc. 20 (in their initial motion, Plaintiffs also fail to point to any caselaw which establishes this Court's power or jurisdiction to recall a writ of possession issued by a state court of competent jurisdiction)).

[8] The Archers identified the federal issue as follows: "Should defendant 'AFFCU' have started foreclosing on the Archers['] home of 27 years in the first place, while having access to $30,000 of federal loss-mitigation funds it sent the Archers to get, making it impossible for the mortgage to have been 120 days in arrears?" (Doc. 23, at 3).

(Continued)

Authority with judicial powers [] National Credit Union Administration [NCUA] since January 2015. The defendant was found to have broken federal law, overcharging through temporary modifications that it strongly encouraged. (*Exhibit O and Exhibit N*).[9] As the defendant points out this has been ongoing since then and the defendant is finally in federal court." (footnote added))).

In its reply, AFFCU simply reiterates why Plaintiffs' claims are barred by the applicable statute of limitations and *res judicata* and, as well, why and how Plaintiffs waived their right to assert a claim under RESPA by failing to raise it as a compulsory counterclaim in the Mobile County Circuit Court. (*See* Doc. 24). In addressing the statute of limitations argument, AFFCU explains why Plaintiffs' response provides further support for why their claims are time-barred. (*Id.* at 1-2).

> First, Plaintiff argues that AFFCU's "illegal predatory conduct was brought to the attention of Federal Authority with judicial powers (NCUA) National Credit Union Administration <u>since January 2015</u>." *Id.* (emphasis added). January 2015 is more than three years before this lawsuit was filed. Given that the purported "illegal predatory conduct" was brought to the attention of the NCUA more than three years before this suit was filed is further evidence that Plaintiffs' claims are time barred.
>
> Second, Plaintiffs cite to Exhibits O and N to support their argument that AFFCU "was found to have broken federal law, overcharging through temporary modifications that it strongly encouraged." *Id.* Exhibit O is dated

---

[9] By letter dated October 21, 2015, the Office of Consumer Protection of the National Credit Union Administration ("NCUA") did ***not*** make a specific finding that AFFCU broke federal law; instead, the consumer protection arm of NCUA determined that based on AFFCU's actions in "subsequently" providing the Archers with a copy of the appraisal and refunding them the cost of the appraisal, it was closing its file based on a final resolution of the matter. (Doc. 7, Exhibit O). This arm of the NCUA went on to inform Lewis Archer that since it could not provide legal advice, he might want to consult with private counsel to inform his "ability to pursue a private right of action if one exists." (*Id.*).

As for Exhibit N, that exhibit provided by Plaintiffs makes reference to $923.24 in finance charges assessed against the Archers by AFFCU sometime before September of 2015 that were subsequently credited to the Archers['] mortgage account as reflected in the September 2015 statement. (*See* Doc. 7, Exhibit N).

10

> October 15, 2015. Doc. 7, Page ID #118-119. Exhibit N pertains to a purported overcharge of $923.24 in finance charges that were credited back to Plaintiffs in September 2015. Doc. 7, Page ID #116-117. Again, these allegations of wrongdoing occurred more than three years before this lawsuit was filed.

(*Id.*).

## CONCLUSIONS OF LAW

**A.** **Motion to Dismiss Standard and Judicial Notice**. As reflected above, AFFCU's principle arguments in support of dismissal of the second-amended complaint are that the Archers' claims are barred by the applicable statute of limitations and by the doctrine of *res judicata*. The Eleventh Circuit has made clear that "a motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense[,]" *Edwards v. Apple Computer, Inc.,* 645 Fed.Appx. 849, 851 (11th Cir. Mar. 9, 2016), citing *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288, 293 (5th Cir. 1977), and, as well, is an appropriate vehicle by which to raise the Rule 8(c) affirmative defense of *res judicata* "where the existence of the defense can be determined from the face of the complaint[,]" *Solis v. Global Acceptance Credit Co., L.P.,* 601 Fed.Appx. 767, 771 (11th Cir. Jan. 28, 2015), citing *Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir. 1982).

When deciding a 12(b)(6) motion to dismiss, a court will "'primarily consider the allegations in the complaint,' but '. . . is not [always] limited to the four corners of the complaint.'" *Halmos v. Bomardier Aerospace Corp.,* 404 Fed.Appx. 376, 377 (11th Cir. Dec. 7, 2010), quoting *Long v. Slaton,* 508 F.3d 576, 578 n.3 (11th Cir. 2007) (other citation omitted). Indeed, the Eleventh Circuit has made clear that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion

11

into a Rule 56 motion." *Id.* (citations omitted); *see also id.* ("The district court's determination did not exceed the permissible scope of a 12(b)(6) motion to dismiss—the complaint, attachments to the complaint, and matters of public record."). Of particular import in this case, the Eleventh Circuit has held that "[c]ourts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *United States ex rel. Osheroff v. Humana, Inc.,* 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citations omitted); *see also Solis, supra,* 601 Fed.Appx. at 771 (in affirming the grant of a motion to dismiss on *res judicata* grounds, the Eleventh Circuit concluded that "the district court properly considered its own records in resolving the defendants' motion to dismiss."). Accordingly, this Court can properly consider not only those documents attached to Plaintiffs' second-amended complaint but, as well, those publicly filed documents in the state court litigation between AFFCU and the Archers.

  **B.**   <u>**Statute of Limitations on 12 U.S.C. § 2605(f) RESPA Claims**</u>. The Archers' second-amended complaint makes clear that their action is filed pursuant to § 6(f) of RESPA, 12 U.S.C. § "2605(f)(1)(3)." Plaintiffs specifically assert two counts seeking to enforce the provisions of 12 C.F.R. § 1024.41 (*see* Doc. 7, at 2-4). *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue "[w]hoever fails to comply with any provision of this section").

 "Section 2605 of RESPA governs the 'servicing of mortgage loans and administration of escrow accounts' and 'has a three year statute of limitations[,]'" *Hennington v. JPMorgan Chase Bank, N.A.,* 2018 WL 4474642, *10 (N.D. Ga. Apr. 10,

2018) (quoting *Hudgins v. Seterus, Inc.,* 192 F.Supp.3d 1343, 1347 (S.D. Fla. 2016)), *report and recommendation adopted,* 2018 WL 4473143 (N.D. Ga. Sept. 6, 2018), which begins to run when the violation occurs, 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605 . . . of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title . . . ***from the date of the occurrence of the violation***[.]" (emphasis supplied)).

Count 1 of the Plaintiffs' amended complaint alleges a July 11, 2014 violation of the dual tracking provisions of 12 C.F.R. § 1024.41(f)(1) (Doc. 7, at 2) and Count 2 of the amended complaint alleges an October 2014 violation of § 1024.41(i) (*id.* at 4). Because Plaintiffs did not file their RESPA claims until May 31, 2019 (*see* Doc. 1 (original complaint of Plaintiff Lewis Archer was filed on May 31, 2019)), more than three years after Plaintiffs' amended complaint alleges that the violations of § 1024.41 occurred, those claims are barred by RESPA's three-year limitations period.[10]

At no point since the institution of this lawsuit have the Archers made any argument that RESPA's three-year limitations period should be equitably tolled;

---

[10] Even if the Court was to consider that Count 1 of the complaint alleges a "continuing" violation of § 1024.41(f) until January 29, 2019, the final disclosure date and the date AFFCU "sent a letter terminating all modification efforts" (Doc. 7, at 3), Plaintiffs' claims still remain barred by the three-year statute of limitations. The same is true even if the Court considers the date set forth in Plaintiffs' response in opposition and associated date referenced in the opposition. (*See* Doc. 23, at 7 (citation to January 2015 as being the date the Plaintiffs' brought to the attention of the NCUA Defendant's purported "illegal predatory conduct"); *cf.* Doc. 7, Exhibit O (October 21, 2015 letter from the consumer protection arm of the NCUA, advising Lewis Archer that based upon AFFCU's actions in subsequently supplying him with a copy of the appraisal and refunding him the cost of the appraisal, his file was being close—based on resolution of the matter—and advising that his ability to pursue a private right of action was not being limited if he had a private right of action)).

however, even had they made such an argument, they do not allege any facts that would support application of equitable tolling. The Eleventh Circuit has made clear that "'[i]n order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control.'" *McCarley v. KPMG Int'l,* 293 Fed.Appx. 719, 722-23 (11th Cir. Sept. 15, 2008), quoting *Drew v. Department of Corrections,* 297 F.3d 1278, 1286-87 (11th Cir. 2002). "The burden of establishing entitlement to this extraordinary remedy rests with the petitioner." *Id.* at 723, citing *Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir. 1993). And while there "appears to be a circuit split regarding whether equitable tolling applies to RESPA claims[,]" and the Eleventh Circuit "has not addressed the issue directly," the appellate court has "acknowledged the potential application of equitable tolling to RESPA actions." *Id.* at 723 n.6 (citations omitted).

Even assuming that equitable tolling applies to RESPA claims, the undersigned finds nothing in the Archers' amended complaint (*see* Doc. 7) in the way of facts that would excuse the delay in filing their federal complaint. The amended complaint simply alleges various violations of RESPA provisions in 2014 (and a final foreclosure date of January 29, 2016, the same date that Plaintiffs were advised that AFFCU was terminating all modification efforts) but does not allege any facts to explain why they did not then file their RESPA claims until May 31, 2019, *see McCarley, supra,* 293 Fed.Appx. at 723 (affirming the district court's grant of summary judgment in favor of Defendant HSBC Mortgage Corporation on Plaintiff's RESPA claims on the alternate ground that those claims were barred by the three-year statute of limitations because the alleged violations occurred more than three years before McCarley filed his

14

complaint and even assuming equitable tolling is applicable to RESPA claims, Plaintiff did not proffer "any evidence to show the doctrine should apply."), either in this Court or in Mobile County Circuit Court, see 12 U.S.C. § 2614, *supra*. Instead, it is apparent from Plaintiffs' amended complaint (Doc. 7) and the remaining evidence of record attached to the amended complaint and documents which this Court can take judicial notice of that the Archers simply waited until the ejectment proceedings were all but completed in state court before filing the instant lawsuit in an attempt to get a second bite at the proverbial apple. Under these circumstances, it is clear to the undersigned that the Court must dismiss Plaintiffs' RESPA claims (that is, the amended complaint) as time-barred.[11]

---

[11] In light of the clear untimeliness of Plaintiff's RESPA claims, the undersigned pretermits any lengthy discussion of AFFCU's alternative argument that the Archers' RESPA claims are barred under the doctrine of *res judicata*. (*See* Doc. 15, at 7-12). The undersigned does note parenthetically that though AFFCU improperly identifies the controlling law as federal claim preclusion law (*see id.* at 9-10), *compare Kizzire v. Baptist Health Sys., Inc.,* 441 F.3d 1306, 1308 (11th Cir. 2006) (recognizing that where, as here, a federal district court is "'asked to give *res judicata* effect to a state court judgment, [the court] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation.'") *with Brosnick v. Wells Fargo Bank, N.A.,* 2018 WL 6807340, *4 (S.D. Fla. Sept. 25, 2018) ("'When a suit is brought under federal question jurisdiction, and the federal court "is asked to give res judicata effect to a state court judgment, it must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation."'"), this error would not prevent the Court from reaching the merits of AFFCU's argument in this regard since "Alabama law on the doctrine[] of *res judicata* . . . is substantively the same as federal law." *McCulley v. Bank of America, N.A.,* 605 Fed.Appx. 875, 878 (11th Cir. Apr. 2, 2015); *cf. Kizzire, supra,* 441 F.3d at 1308-09 ("Under Alabama law, 'the essential elements of *res judicata* are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.'") *with Ragsdale v. Rubbermaid, Inc.,* 193 F.3d 1235, 1238 (11th Cir. 1999) ("Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."), *cert. denied,* 530 U.S. 1223, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000).

In arguing that the first two *res judicata* elements are not met (Doc. 23, at 6; *see also id.* at 3-5), the Archers confuse those two elements with the fourth element, *see Duke v. Nationstar Mortgage, L.L.C.,* 893 F.Supp.2d 1238, 1246 (N.D. Ala. 2012), as the Mobile County Circuit (Continued)

**C. Plaintiffs' Motion to Recall Writ of Possession (Doc. 20)**. On August 2, 2019, the Archers filed a motion to recall writ of possession. Therein, the Plaintiffs initially state they were simply following instructions of the Mobile County Circuit Court in "filling out forms to recall a writ of possession" (*id.* at 1) but then go on to argue that since AFFCU "filed a motion on 8/1/2019 to make this more than it is," they now request this Court "to issue an order for the defendant itself to immediately recall the writ of possession and cease and desist all such actions while this case is ongoing." (*Id.* at 2).

---

Court's granting of summary judgment in favor of AFFCU in the ejectment action (that is, granting possession of the house/property to AFFCU), which was affirmed by the Alabama Court of Civil Appeals, constitutes a prior judgment (or prior judgments) on the merits, *compare Mars Hill Baptist Church of Anniston, Ala., Inc. v. Mars Hill Missionary Baptist Church,* 761 So.2d 975, 978 (Ala. 1999) ("'A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of the parties disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.'") *with Ex parte Jefferson County,* 656 So.2d 382, 385 (Ala. 1995) ("A summary judgment acts as a judgment on the merits.") and there is no doubt that both of these courts are indisputably courts of competent jurisdiction, *see, e.g., Duke, supra,* 893 F.Supp.2d at 1246 ("The Circuit Court of Shelby County was indisputably a court of competent jurisdiction over the case before it."). And, of course, the third *res judicata* element is satisfied because the parties in this action and the ejectment action are identical (they have simply "switched" places). *See Greene v. Jefferson County Comm'n,* 13 So.3d 901, 912 (Ala. 2008) (recognizing that parties are substantially identical for purposes of *res judicata* when they are the same (that is, exactly identical) or in privity with one another).

The pivotal issue in this case, as in most cases, is whether the fourth *res judicata* element is satisfied; that is, whether this action and the state court ejectment action are the same for *res judicata* purposes. And this is where the undersigned does not reach a specific determination (in light of the Archers' untimely assertion of their RESPA claims), even though there is some facial appeal to AFFCU's putative implicit argument that this fourth element is met because the Archers' current claims were compulsory counterclaims in the state court ejectment action and were not properly raised as compulsory counterclaims in the state court action (*see* Doc. 15, at 11-12). *Compare Duke, supra,* at 1249-50 *with Patrick v. CitiFinancial Corp., LLC,* 2015 WL 5236031 (M.D. Ala. Sept. 8, 2015) and *Clark v. Wells Fargo Bank, N.A.,* 24 So.3d 424 (Ala. 2009); *see generally* Ala.R.Civ.P. 13(a) (defining compulsory counterclaim and recognizing that a party **must** assert it in **a pleading**); Ala.R.Civ.P. 7(a) (setting forth the limited universe of pleadings, none of which are an appellate brief).

It is obvious that the "motion" filed by AFFCU on August 1, 2019, to which the Archers make reference, is the Defendant's supplement to its motion to dismiss (Doc. 19), to which was attached the Plaintiffs' purported notice of removal filed in the prior state court ejectment action (*see id.,* Exhibit 12).

The undersigned recommends that this Court **deny** Plaintiffs' motion to recall writ of possession (Doc. 20) given the foregoing analysis that the Archers' RESPA claims are time-barred. Moreover, even in absence of the statute of limitations analysis, the undersigned would recommend the denial of the Plaintiffs' motion because the Archers have not cited this Court any caselaw (or other authority) which establishes that this Court (in what would have to be regarded as a collateral proceeding) possesses the power to recall a writ of possession issued by an Alabama court of competent jurisdiction (that is, the Circuit Court of Mobile County, Alabama) or the power to order AFFCU to recall the writ of possession. When the Circuit Court of Mobile County, Alabama entered judgment in favor of AFFCU and against the Archers on June 25, 2018, finding AFFCU entitled to possession of the subject property, the court specifically authorized issuance of a writ of possession by the Clerk of Court to the Sheriff of Mobile County, Alabama "for the execution of such writ." (Doc. 15, Exhibit 4). The trial court's judgment was affirmed by the Alabama Court of Civil Appeals on May 17, 2019 (Doc. 15, Exhibit 9) and the state court ejectment action ended with the appellate court's issuance of a certificate of final judgment of affirmance on June 5, 2019 (*see* Doc. 15, Exhibit 10).

The fact that the Archers initiated the federal court litigation on May 31, 2019 (*see* Doc. 1), some five days before the state court ejectment action ended, supplies no

authority for this Court to countermand process authorized by the Mobile County Circuit Court (and affirmed by the Alabama Court of Civil Appeals). After all, the Archers initiated suit in this Court (*see* Doc. 1 (entitled a complaint, not a notice of removal with attached documents from state court)); they did not remove the state court ejectment action from the Mobile County Circuit Court, *see* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court **shall file** in the district court of the United States for the district and division within which such action is pending **a notice of removal** signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing **a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such** defendant or **defendants in such action**." (emphasis supplied)), nor could they have done so because the state court litigation was, at the time of initiation of this suit, still before the Alabama Court of Civil Appeals and remained there until its conclusion on June 5, 2019. And, of course, it bears observation that since May 31, 2019, when Lewis Archer first initiated this federal action (*see* Doc. 1), the Archers have never been in a position to (procedurally speaking) timely remove the state court ejectment action to this Court, *see* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding **shall be filed within 30 days** after receipt by the defendant, through service or otherwise, of a copy of an ***initial pleading*** setting forth the claim for relief upon which such action or proceeding is based . . . ."), nor would they have ever been successful, from a substantive standpoint, in removing the state court ejectment action in a timely manner within 30 days of the filing of that action on April 11, 2016 (that is, by May 11, 2016), since the removal (obviously) would have been based upon RESPA counterclaims, *see,*

*e.g., Vaden v. Discover Bank,* 556 U.S. 49, 60, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009) ("Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."); *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 830, 122 S.Ct. 1889, 1893, 153 L.Ed.2d 13 (2002) ("[T]he well-pleaded complaint rule, properly understood, [does not] allow[] a counterclaim to serve as the basis for a district court's 'arising under' jurisdiction."); *HSBC Bank USA Nat'l Ass'n v. Bobrowski,* 2015 WL 4506824, *2 (M.D. Fla. July 23, 2015) ("[T]he assertion of federal counterclaims is insufficient to confer federal question jurisdiction under § 1331.").

To the extent the Archers have any remaining entitlement to recall of the writ of possession (which does not appear to be the case), they must seek such relief in the state courts of Alabama, as they alluded to in the first sentence of their motion; this Court simply lacks the power to take any action with respect to the writ of possession issued by the Mobile County Circuit Court, whether by recall the writ itself or ordering AFFCU to recall the writ. Thus, it is recommended that the Archers' motion to recall writ of possession (Doc. 20) be **DENIED** on this alternative basis as well because the Archers' RESPA claims are time-barred.

## **CONCLUSION**

Based upon the foregoing, it is **RECOMMENDED** that the Court **GRANT** Defendant AFFCU's motion to dismiss second-amended complaint (Doc. 15), as supplemented (Doc. 19), and **DENY** Plaintiffs' motion to recall writ of possession (Doc. 20).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of September, 2019.

                            s/P. Bradley Murray
                            **UNITED STATES MAGISTRATE JUDGE**